IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 20-24044-Civ COOKE/O'SULLIVAN

OSVALDO SOTO,

    Plaintiff,

v.

BOOKING.COM B.V., AND
BOOKING HOLDINGS INC.,

    Defendants.
_____/

### REPLY IN SUPPORT OF MOTION TO SUBSTITUTE PLAINTIFF

Eduardo Soto, as Personal Representative of Osvaldo Soto's estate, files this reply in support of his motion for substitution as plaintiff in place of his father, the recently deceased Osvaldo Soto. Defendants oppose this perfectly ordinary motion to substitute the deceased plaintiff's personal representative on the absurd theory that Title III of the Helms-Burton Act (the "Act") is not a remedial statute, and that Congress evidently intended for juridical entities' claims to have immortality but for living persons' pending claims to die when they do.[1] This is not what the Act provides, let alone what Congress intended. The Motion to

---

[1] Title III cannot fairly be read to grant immortality to the claims of corporations, but bar the claims of estates of real people who die while their claims are pending. To deny this substitution motion would require endorsing the absurd result that Eduardo Soto may purchase Exxon shares today and acquire an indirect interest in Exxon's claim, but may not pursue his family's pending claim as the personal representative of his deceased father's estate. Such a result can't be squared with the Act's statutory language and purpose, let alone principles of fundamental fairness. Further, in pending Title III cases with a corporate plaintiff, even a family-owned, closely held corporation, the purchase or inheritance of shares has been a non-event because the plaintiff is immortal, even though its owners are not. *Havana Docks Corp. v. Carnival Corp.*, WL 8895241 (S.D. Fla. 2019). Congress did not intend for Title III to protect entities (whose owners may change daily) without also protecting real people (whose ownership interests are inherited when they die).

Substitute (D.E. 39) should be granted, and Eduardo Soto, as personal representative of Osvaldo Soto's estate, should be substituted as Plaintiff for his recently deceased father, the late Osvaldo Soto.

Rule 25 governs substitution and provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party." Fed. R. Civ. 25(a)(1). The Act does not expressly extinguish a pending Title III claim when the plaintiff dies, and this Court should order substitution because a Title III claim is remedial in nature, as we shall see.

Where a federal statute does not expressly provide for survival of claims, courts look to federal common law for guidance, and apply a "remedial or penal" standard. *See, e.g., U.S. v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1369 (M.D. Fla. 2018). "It is well-settled that remedial actions survive the death of [a party], while penal actions do not. . . ." *U.S. v. NEC Corp.*, 11 F.3d at 137 (internal citation omitted). "A remedial action is one that compensates an individual for specific harm suffered, while a penal action imposes damages upon the defendant for a general wrong to the public." *Id.*; *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 876 (11th Cir. 1986); *United States v. Green*, 457 F. Supp. 3d 1262, 1271 (S.D. Fla. 2020); *U.S. v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1369 (M.D. Fla. 2018).

There is no doubt that this Title III action is remedial. First, the Act does not state that it imposes any penalties on defendants, period, and Title III describes itself as remedial. *See* 22 U.S.C. § 6082 (a). This is dispositive evidence that it is remedial, cannot be penal, and that Osvaldo Soto's claim survived his passing. That should be the end of the matter.

The Eleventh Circuit has generally held that in deciding whether a statute is penal or remedial, a court must examine three factors: "(1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; (2) whether recovery under the statute runs to the harmed individual or to the public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." *NEC Corp.*, 11 F.3d at 137.

*First*, the Act expressly states that its purpose is to provide a judicial remedy to "United States nationals who were the victims of these confiscations." 22 U.S.C.A. § 6081 (11). The Act provides a means of redress to individual owners of confiscated and trafficked property, not to the public in general. *Second*, recovery for damages under the Act run only to the plaintiff/owner of the claim to confiscated property, not the public. *See* 22 U.S.C.A. § 6082

2

(a)(1)(A) ("Except as otherwise provided in this section, any person that . . . traffics in property . . . shall be liable **to any United States national who owns the claim to such property** for money damages . . .") (emphasis added). *Third*, recovery under the Act is not disproportionate to the harm suffered because the recovery is firmly tethered to the value of the confiscated and trafficked property. Moreover, it cannot be disproportionate in light of the harm suffered by the property owners and the "unjust enrichment from the use of [their] wrongfully confiscated property by governments and private entities at [their] expense." 22 U.S.C.A. § 6081 (8). Applying the three factors *NEC* sets forth leaves no doubt that the Act is a remedial statute. The Court can stop here.

In other cases that involve the death of a party and a statute that both imposes a penalty and provides a remedy, courts follow *Hudson v. U.S.*, 522 U.S. 93 (1997) to determine if the nature of the statute containing a penalty is civil or criminal. This involves: (1) asking whether the legislature expressed a preference for labeling the penalizing mechanism as civil or penal and, even if the court concludes that the penalty was intended as civil; (2) applying the seven "*Kennedy* factors" to determine "'whether the scheme was so punitive either in purpose or effect' as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.'" *Id*. at 99-100 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)). Congress's express intent was that Title III provide a "civil remedy," which is what Congress entitled the Act's sole damages provision. *See* 22 U.S.C. § 6082(a). The Act has no penalty provision, and the seven *Kennedy* factors do not permit mischaracterizing the Act's damages provision as a penalty at all. Defendants travel on this inapplicable standard, which compels us to address it. Even if it were applicable (it is not) there would be no doubt that plaintiff's Title III claim is remedial and survived his death.

## I.     Osvaldo Soto's Title III Claim is *Prima Facie* Remedial in Nature

Osvaldo Soto's Title III claim is prima facie remedial because Congress expressly stated its intent to provide a civil remedy for "Liability for Trafficking in Confiscated Property Claimed by United States Nationals" through a provision expressly entitled "Civil Remedy." 22 U.S.C. § 6082 (a); *cf. United States v. Ward*, 448 U.S. 242, 249 (1980) ("[W]e believe it quite clear that Congress intended to impose a civil penalty upon persons in Ward's position" because it included the label "civil penalty.").

Thus, plaintiff's Title III claim, under the first part of the two-part *Hudson* analysis, is presumed to be remedial. *E.g., Grossfeld v. Commodity Futures Trading Com'n*, 137 F.3d 1300, 1303 (11th Cir. 1998) (finding "prima facie evidence that Congress intended to provide for a civil sanction."). Nonetheless, defendants demand the Court find that Osvaldo Soto's Title III claim is penal in nature and died with him. Opp. at 6. They completely and conveniently ignore not only *NEC*, discussed above, but they also ignore the first part of the *Hudson* analysis—whether Congress expressed a preference for referring to the Act as remedial or civil or penal—and instead, jump ahead to the second part—applying the *Kennedy* factors. *Id*. This is not remotely correct or permissible. Congress expressly intended for the Title III remedy to be just that, and went out of its way to expressly refer to it as a "civil remedy," in a statute with no agency enforcement provisions and no penalty provisions at all.

Defendants alone can answer why they failed to address *NEC*, and omitted step one of the *Hudson* analysis from their Opposition to the Motion to Substitute, which all but wholly undermine their effort to mischaracterize Title III as penal. In *United States v. Alcocer Roa*, 753 Fed. Appx. 846, 848–49 (11th Cir. 2018), after finding a statutory sanction provision was prima facie civil, the Eleventh Circuit applied the *Kennedy* factors and held that the defendant "had not met th[e] heavy burden [] needed to provide the clearest proof to override the legislature's intent and transform [civil sanctions] into a criminal penalty." So it is here.

**II.    The Presumption That Osvaldo Soto's Title III Claim Is Remedial in Nature Is Confirmed by Applying the *Kennedy* Factors**

Even if it were necessary to go this far, the second part of the *Hudson* test, the *Kennedy* factors, confirm that plaintiff's claim is remedial in nature. The *Kennedy* factors include:

> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

*Estate of Schoenfeld*, 344 F. Supp. 3d at 1370 (quoting *Kennedy*, 372 U.S. at 168–69).

Defendants' opposition to the Motion to Substitute Plaintiff merges the *Kennedy* factors in a hodgepodge of facts without addressing the factors that, on their face, tend to weigh against converting the remedy under the Act from remedial to penal.

    A.    *Osvaldo Soto's Title III Claim Is Remedial in Nature Because It Does Not Involve an Affirmative Disability or Restraint*

The first *Kennedy* factor—whether a statutory sanction involves an affirmative disability or restraint—weighs in favor of finding the claim remedial in nature. First, Title III imposes no "sanction" on anyone, let alone a disability or restraint. Defendants are subject to liability for damages, nothing more, as they would be on any other civil claim. Second, courts interpret an affirmative disability or restraint to mean "'the infamous punishment' of imprisonment." *Hudson*, 522 U.S. at 104; *United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1371 (M.D. Fla. 2018).

Title III provides a damages remedy. That's it. There is no penalty provision at all, let alone a penalty provision providing for imprisonment or any other form of "affirmative disability or restraint." *Hudson* 522 U.S. at 104; *Simpson v. Bouker*, 249 F.3d 1204, 1213 (10th Cir. 2001) (Even monetary *penalties* do not constitute affirmative disabilities or restraints.); *Reiserer v. United States*, 479 F.3d 1160, 1163 (9th Cir. 2007) (same); *Cole v. U.S. Dep't of Agric., A.S.C.S.*, 133 F.3d 803, 806 (11th Cir. 1998) (same).

Defendants should know that this first *Kennedy* factor supports finding that a Title III claim is ***not*** penal in nature, and wholly fail to note its reference to (and requirement of) affirmative disabilities or restraints, which are totally lacking here.

    B.    *Osvaldo Soto's Title III Claim Is Remedial in Nature Because it Has Never Been Regarded as a Punishment*

The second *Kennedy* factor—whether a penalty has historically been regarded as a punishment—also dispositively weighs in favor of finding that plaintiff's claim is remedial in nature. First, and as noted above, Title III contains no penalties, period. Second, even if the damages remedy provided by its "Civil Remedy" provision had been labeled a "penalty," it is well settled that monetary penalties are not punishment. "[T]he Supreme Court has determined that money penalties have not historically been viewed as punishment." *Cole*, 133 F.3d at 806 (citing *Hudson*, 522 U.S. at 104). Specifically, "the payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforce[a]ble by civil

proceedings since the original revenue law of 1789." *Hudson*, 522 U.S. at 104 (quoting *Helvering v. Mitchell*, 303 U.S. 391, 400 (1938) (internal quotation marks omitted)).

As with the first *Kennedy* factor, defendants wholly fail to note that the second *Kennedy* factor (like the first) supports finding that a Title III claim is ***not*** penal in nature.

### C. Osvaldo Soto's Title III Claim Is Remedial in Nature Because It Does Not Require a Finding of Scienter

Title III authorizes the recovery of damages from persons who knowingly and intentionally engage in a commercial activity using or otherwise benefiting from confiscated property. *See* 22 U.S.C. § 6023(13)(A)(ii). Title III damages may be recovered regardless of a trafficker's mental state or intent. No *mens rea* is required, and defendants (like all other traffickers) have been on notice since 1960 that the Castro regime confiscated all real property in Cuba (including the Soto property). Defendants also have been on notice since 1996 that trafficking this confiscated property would subject them to liability under Title III. *See* President's Statement on Action on Title III of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1995, 32 Weekly Comp. Pres. Doc. 1265 (July 16, 1996) (G.P.O. authenticated version available at www.govinfo.gov/content/pkg/WCPD-1996-07-22/pdf/WCPD-1996-07-22-Pg1265.pdf).

Put simply, the claim at issue requires only that trafficking not occur accidentally or unintentionally, in other words, that the trafficker acted volitionally or "on purpose." But even if more were required, and even if this factor could be viewed as favoring a finding that a Title III claim were penal, it would be insufficient to overcome the presumption of a remedial claim under *NEC* and part one of the *Hudson* analysis, and six of the other seven *Kennedy* factors support finding that the claim is remedial in nature. "No one factor should be considered controlling as they 'may often point in differing directions.'" *Hudson*, 522 U.S. at 101.

### D. Osvaldo Soto's Title III Claim Is Remedial in Nature Because Its Operation Serves Other Purposes Besides Retribution and Deterrence

Defendants spill most of their ink arguing that the Act ought to be viewed as if it were a criminal penalty statute because it promotes punishment, retribution and deterrence. Opp. at 7-9. This is plainly wrong because, as the Supreme Court and Eleventh Circuit have noted in cases that (unlike this one) actually involved statutes imposing penalties, "all civil penalties

6

have some deterrent effect," and none are "'solely' remedial (i.e., entirely nondeterrent)." *Hudson*, 522 U.S. at 102; *Cole*, 133 F.3d at 807 ("[T]he over-quota marketing penalty is intended to deter producers from exceeding their quotas, but the legislative purpose of discouraging the sale of over-quota tobacco is merely a regulatory goal, not a criminal goal.").

Even where deterrence is a statutory goal, it "may serve civil as well as criminal goals." *Hudson*, 522 U.S. at 102 (citing *United States v. Ursery*, 518 U.S. 267 (1996)). The *Hudson* court reasoned that "[t]o hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' for double jeopardy purposes would severely undermine the Government's ability to engage in effective regulation of institutions." 522 U.S. at 105. The same principle applies to determining the survival of a civil claim. *Estate of Schoenfeld*, 344 F. Supp. 3d at 1371.

Although the damages provided by Title III's "Civil Remedy" provision might also serve other purposes, those purposes do not render Title III penal in nature. *See United States v. Green*, 457 F. Supp. 3d 1262, 1271 (S.D. Fla. 2020). Moreover, the *Kennedy* factors, taken together, overwhelmingly support finding that a Title III claim is remedial in nature.

### E. Osvaldo Soto's Title III Claim Is Remedial in Nature Because Trafficking Under the Act Is Not Defined as a Crime

The fifth *Kennedy* factor— whether the behavior to which it applies is already a crime— also supports the conclusion that plaintiff's claim is remedial in nature. Neither the Act nor any preexisting statute makes defendants' trafficking criminal. The Act defines trafficking as knowingly and intentionally engaging in a commercial activity using or otherwise benefiting from confiscated property. *See* 22 U.S.C. § 6023(13)(A)(ii). Trafficking under the Act is not defined as a crime. That should be the end of the inquiry.

Moreover, even if other statutes might make defendants' conduct a crime, "Congress frequently imposes "both a criminal and civil sanction in respect to the same act or omission." *Helvering*, 303 U.S. at 399. Thus, even if defendants' trafficking might violate some other statute making it a crime, that would be insufficient to transform the civil remedy of damages under the Act into a criminally punitive penalty. To hold otherwise would contradict Congress's manifest intent, which was amply illustrated by its decision to entitle 22 U.S.C. § 6082: "Civil Remedy." *See Helvering*, 303 U.S. at 404 ("The fact that the Revenue Act of 1928 contains two separate and distinct provisions imposing sanctions, and that these appear in different parts of the statute, helps to make clear the character of that here invoked.").

7

Defendants' attempt to analogize trafficking under the Act to drug trafficking under 18 U.S.C. § 924(c)(2) is devoid of merit, because trafficking properties confiscated from U.S. nationals was not a crime before the Act was passed (and still isn't).

### F. Osvaldo Soto's Title III Claim Is Remedial in Nature Because it Furthers the Alternative Purpose of Protecting the Rights of U.S. Citizens in Property Confiscated from Them

Quite apart from its express remedial purpose, as well as defendants' hypothesized goals of retribution and deterrence, Title III's civil remedy serves an important additional alternative purpose: protecting the rights of U.S. citizens by compensating them for the exploitation of their confiscated property. 22 U.S.C.A. § 6081; *see, e.g., Helvering*, 303 U.S. at 401 (In addition to retribution and deterrence, tax code penalties further the additional alternative purpose of acting as "a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud."); *Estate of Schoenfeld*, 344 F. Supp. at 1372.

### G. Osvaldo Soto's Title III Claim Is Remedial in Nature Because it Is Not Excessive in Relation to its Important Alternative Purpose of Protecting the Rights of U.S. Citizens in Property Confiscated from Them

The Title III civil remedy cannot be improperly excessive because it is firmly tethered to the value of the trafficked property. Moreover, it cannot be excessive because of its important alternative purpose, protecting the rights of U.S. citizens in property stolen from them. *See, e.g., Helvering*, 303 U.S. at 401 (finding that a tax statute imposing a 50% penalty was nonetheless remedial in nature because of the important purposes it served.).

## CONCLUSION

Applying *NEC,* the *Hudson* presumption and *Kennedy* factors demonstrate that "there is little evidence, much less the clearest proof" needed to transform Title III's damages remedy for trafficking, which "was clearly intended as a civil remedy," into a criminal penalty. *See Ward*, 448 U.S. at 249. Congress expressly intended to create a civil remedy (and called it exactly that) in a statute creating a private claim for damages tied to the value of trafficked property. Title III is remedial in nature, and Osvaldo Soto's claim was not extinguished by his death. The Motion to Substitute Plaintiff should be granted.

Dated this 7th day of April, 2021.

          Respectfully submitted,

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
E-mail: arivero@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: amalave@riveromestre.com
E-mail: jwolfson@riveromestre.com

By: s/ Andrés Rivero
    ANDRÉS RIVERO
    Florida Bar No. 613819
    ALAN H. ROLNICK
    Florida Bar No. 715085
    ANA MALAVE
    Florida Bar No. 83839
    JOSIAH WOLFSON
    Florida Bar No. 123174

**MANUEL VAZQUEZ, P.A.**
2332 Galiano St., Second Floor
Coral Gables, Florida 33134
Telephone: (305) 445-2344
Facsimile: (305) 445-4404
E-mail: mvaz@mvazlaw.com
By: /s Manuel Vazquez
    MANUEL VAZQUEZ
    Florida Bar No. 132826

## CERTIFICATE OF SERVICE

I certify that on April 7, 2021, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ Andrés Rivero
    ANDRÉS RIVERO