UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 20-24044-CV-MIDDLEBROOKS

EDUARDO SOTO, as Personal Representative
of the Estate of OSVALDO SOTO,

    Plaintiff,

v.

EXPEDIA GROUP, INC.,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE comes before the Court upon Defendant Expedia Group, Inc.'s Motion to Dismiss, filed on January 12, 2024. (DE 124). Osvaldo Soto first filed this action on October 20, 2020, against Defendants, asserting a single cause of action under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. §6021, et seq. (the "Helms-Burton Act"). Specifically, Title III of the Helms-Burton Act states that entities that "traffic[] in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property for money damages[.]" 22 U.S.C. §6082(a)(1)(A). On July 29, 2020, Judge Marcia G. Cooke, the presiding judge at the time, entered an order staying the case pending the U.S. Court of Appeals for the Eleventh Circuit's resolution of two appeals: *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1270 (11th Cir. 2022), cert. denied sub nom. *Expedia Grp., Inc. v. Del Valle*, 144 S. Ct. 90, 217 L. Ed. 2d 21 (2023) and *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 919 (11th Cir. 2023), which presented relevant issues. (DE 99). The case was reassigned to me on November 28, 2023 (DE 112). I lifted the stay on January 4, 2024 (DE 122), and Defendant Expedia Group, Inc. ("Expedia") subsequently filed the present Motion, which is

fully briefed. (DE 128; DE 133).[1] For the reasons set forth below, Defendant's Motion to Dismiss is denied.

## I. BACKGROUND

Plaintiff Osvaldo Soto claimed to be an heir to the famous oceanfront Copacabana Hotel in Havana, Cuba ("the Copacabana"). (DE 49 at 1). Plaintiff Osvaldo Soto filed this case himself on October 20, 2020, but soon after passed away on January 9, 2021. Upon a timely motion by Eduardo Soto, a Personal Representative of Osvaldo Soto's estate, this Court found that the claim survived Mr. Osvaldo Soto's death, and Judge Cooke granted Plaintiff's Motion to Substitute Party. (DE 48). Eduardo Soto, as a Personal Representative of Osvaldo Soto's Estate ("Plaintiff"), filed an Amended Complaint on October 10, 2021, alleging the following facts. (DE 49).

The Copacabana was inaugurated in 1955 by Antonio J. Soto y Castellanos. (*Id.* at 14). Upon Antonio J. Soto's passing in 1962, his entire interest in the property passed to his wife Maria Teresa, and upon her death, the interest in the Copacabana was distributed by succession in equal parts to their five children, including Osvaldo N. Soto. (*Id.*). Fidel Castro seized power in Cuba in 1959 and established a Communist regime. Castro's government confiscated the Copacabana in 1961 from the Soto family. The Cuban government maintains possession and control of the Copacabana and has never returned it nor paid any compensation to Plaintiff for its seizure. (*Id.* at 13).

The Helms-Burton Act was passed in 1996 and the "goal was to deter trafficking of confiscated properties by providing 'United States Nationals who were the victims of the th[o]se confiscations... with a judicial remedy in the courts of the United States.'" *Del Valle*, 56 F.4th at

---

[1] Defendants Booking.com B.V. and Booking Holdings Inc. were dismissed from the case (DE 121) after the Parties filed a Joint Stipulation of Voluntary Dismissal with Prejudice (DE 120). Accordingly, Expedia is the only remaining live Defendant.

2

1270 (citing 22 U.S.C. §6081(11)). Title III of the Helms-Burton Act establishes a private right of action for United States nationals who own claims to such confiscated property against "any person that...traffics in [such] property. *Id.* Under Title III of the Act, Congress denounced the Cuban Government's history of confiscating property of Cuban citizens and U.S. nationals, explaining that "[t]he wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner, undermines the comity of nations, the free flow of commerce, and economic development." 22 U.S.C. §§ 6081(2). The Act explains that foreign investors who traffic in confiscated properties through the purchase of equity interests in, management of, or entry into joint ventures with the Cuban Government to use such properties "complicate any attempt to return [these expropriated properties] to their original owners." *Id.* §§ 6081(5), (7).

Plaintiff alleges that Defendant provides online booking services for hotels in Cuba, including the Copacabana. (DE 49 at 19). Plaintiff alleges that Defendant has "exploited and benefited from the Copacabana for decades" by offering and selling reservations for the "Copacabana to Floridians through [its] Florida offices, employees, and marketing campaigns." (*Id.* at 2). Plaintiff brings this suit against Defendant under the Helms-Burton Act for unlawful trafficking of the Copacabana by making a number of sales of reservations at the Copacabana. Defendant filed the present Motion to Dismiss arguing first that it is not subject to personal jurisdiction in Florida for this action and second that Plaintiff's case must be dismissed for failure to state a claim. (DE 124 at 8).

3

## II. PERSONAL JURISDICTION

### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim when the court lacks personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). The Eleventh Circuit has described the standard for satisfying the prima facie case as the presentation of "enough evidence to withstand a motion for directed verdict." *E.g., Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

"When a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Mosseri*, 736 F.3d at 1350 (quoting *Madara*, 916 F.3d at 1514). At that stage, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (internal citation omitted). I must still "accept[] as true all unchallenged facts in the plaintiff's complaint." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021). But, "[t]o the extent that 'the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, [I] must construe all reasonable inferences in favor of the plaintiff.'" *Id.* at 1364 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249 (11th Cir. 2010)). However, I need only consider "specific factual declarations within the affiant's personal

4

knowledge," and not "statements . . . [which] are in substance legal conclusions." *Posner v. Essex Ins. Co. Ltd.*, 178 F.3d 1209, 1215 (11th Cir. 1999) (per curiam).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Madara*, 916 F.2d at 1514 (citations omitted).

Florida's long-arm statute provides two ways in which a defendant can be subject to personal jurisdiction. *Carmouche*, 789 F.3d at 1203–04. "[F]irst, section 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida." *Id.* at 1204 (citing Fla. Stat. § 48.193(1)(a)). Specifically, a nonresident defendant is subject to personal jurisdiction for any cause of action "arising from" a "tortious act" committed in Florida. § 48.193(1)(a)(2). "[S]econd, section 48.193(2) provides that Florida courts may exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida." *Id.* (quoting § 48.193(2)).

"If there is a basis for the assertion of personal jurisdiction under the state statute, [I] next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Madara*, 916 F.2d at 1514 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (additional citations omitted). In specific jurisdiction cases like this one,

5

we examine whether (1) the plaintiff's claims "arise out of or relate to" one of the defendant's contacts with the forum state; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of "fair play and substantial justice." *See Louis Vuitton*, 736 F.3d at 1355. The Plaintiff bears the burden of establishing the first two requirements. *See id.* If it carries that burden, the Defendants must make a "'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

### 2. Discussion

Defendant now moves to dismiss, arguing that this Court lacks both specific personal jurisdiction and general personal jurisdiction over it in this cause of action. As only one type of personal jurisdiction is required, I will start with a discussion of specific personal jurisdiction in this matter. Defendant is a Delaware corporation, but Plaintiff alleges it is the corporate parent company of a total of "21 subsidiaries or affiliates, through which it maintains more than 200 travel booking sites across more than 70 countries." (DE 49 at 17). Expedia Group, Inc., though neither party claims it's the same entity, along with other companies with the same business model, including Trivago, have already been subject to suit under the Act and raised similar personal jurisdiction challenges. In 2022, the Eleventh Circuit considered the question of whether there was specific personal jurisdiction over the travel websites for their alleged trafficking in properties seized by the Cuban government on their travel booking websites. *See Del Valle v. Trivago GMBH*, 56 F.4th at 1271. Ultimately, the panel held that the district court could exercise personal jurisdiction over the travel websites. The Court analyzed the following operative allegations in support its ruling:

- The websites of the Booking Entities and Expedia Entities "are fully-interactive websites that have robust internet e-business capabilities. They have worldwide reach and are fully accessible in Florida."
- Florida residents could—*and did*—use the websites of the Booking Entities and Expedia Entities to book accommodations at the Resorts.
- The Booking Entities and Expedia Entities promote their websites and the ability to book lodgings at the Resorts on their websites through banner ads directed at Florida residents, follow-up emails sent to Florida residents who have searched for the Resorts or other geographically proximate hotels, and search engine optimization (SEO) efforts intended to maximize performance on search engine results pages.
- In addition to the direct benefit of "receiving commissions or other fees for the booking" of the Resorts, the Booking Entities and Expedia Entities "also derive an indirect benefit" by "receiving advertising revenues driven by or related to" the web traffic generated through their offering of the ability to book lodging at the Resorts.
- "A substantial part' of the Booking Entities' and Expedia Entities' 'business and revenue derives from their Florida offices.'"

*Id.* at 1272. The Eleventh Circuit found that these allegations were sufficient to support of finding of personal jurisdiction under § 48.193(1)(a)(2) of Florida's long arm statute because the plaintiffs alleged that the defendants "trafficked in the confiscated properties by specifically targeting and 'selling' reservations at the Resorts to *Florida residents through their websites.*" *Id.* at 1273 (emphasis in the original).

The Eleventh Circuit next analyzed whether the complaint's allegations and a finding of personal jurisdiction comported with the requirements of the Constitution. Examining the first two requirements of whether due process prohibits the exercise of personal jurisdiction, the Court found that the "plaintiff's Helms-Burton Act claims arise at least in part directly out of the contacts of the [Defendants] with Florida – the promotion targeted at and directed to Florida residents, the accessing of their websites by Florida residents, and the use of those websites by some Florida

7

residents to book accommodations at the Resorts." *Id.* at 1275. These allegations "readily me[e]t" the first prong. *Id.* Next, the Court analyzed the second prong, which concerns purposeful availment. Applying both the "effects test" and the "minimum contacts test," the Court found that the Defendants had purposefully availed themselves of the privilege of doing business in Florida because according to the Complaint the Defendants

> promoted their websites and the ability to book lodging at the Resorts on their websites through banner ads directed at Florida residents, [sent] follow-up direct emails sent to Florida residents who searched for the Resorts or other geographically proximate hotels, and … as a result of those efforts, they secured a direct financial benefit from bookings made by Florida residents at the Resorts and indirect commercial gain from the web traffic generated from Florida residents by virtue of listing the Resorts on their websites.

*Id.* at 1276 – 77. As the Defendants in *Del Valle* did not make any argument that they would be burdened by litigating the case in Florida, the Eleventh Circuit found that there was specific personal jurisdiction to adjudicate the case.

*Del Valle* compels a finding that Plaintiff's Complaint (DE 49) asserts specific personal jurisdiction over Defendant. Plaintiff alleges that Defendant maintains Florida offices from which they contact Florida residents and Cuban hotels, including the Copacabana, regarding reservations booked on its website. (*Id.* at 5). Plaintiff also includes specific factual allegations that Defendant uses "sophisticated internet marketing systems to target and solicit Floridians to make reservations…. [and use the same systems] to send follow up 'you forgot something' emails to Floridians…soliciting and urging them to make reservations" at the Copacabana. (*Id.* at 9). Finally, Plaintiff also explicitly alleges that Defendant has made "a substantial number of sales to Floridians, including sales of reservations at the Copacabana" and that it has "widespread and substantial" revenue from its sale of reservations in Cuba. (*Id.* at 11). These allegations are as

close to identical as to the ones made in *Del Valle* for the same underlying claim of violation of the Helms-Burton Act. Defendant allegedly trafficked by selling reservations at the Copacabana to Florida residents through its website. This is sufficient to satisfy the Florida long arm statute. Moreover, Plaintiff makes multiple allegations that Floridians were directly targeted, and that Defendant had widespread contacts with the State through its direct correspondences and follow up emails to Florida residents and its receipt of significant revenue from the State.

Despite this compelling adverse precedent, Defendant persists in urging this court to dismiss for lack of personal jurisdiction. Defendant does not even cite the *De Valle* case, much less make any effort to distinguish itself from the Defendants in *Del Valle*. Instead, Defendant relies on a sworn declaration of Michael Marron, the Senior Vice President, Legal and Assistant Secretary, of Expedia, Inc. (DE 124-1). Mr. Marron claims that Expedia is just a holding company, that it has only one employee, Mr. Dzielak, who is based in Seattle, and that it does not have any employees in Florida or maintain any offices there. (*Id.*). Critically, Mr. Marron states that Expedia does not provide online booking services for any hotels, nor does it send emails, publish banners, or communicate with hotels in Cuba from Florida. (*Id.* at 3). However, Mr. Marron also states that "all commissions, fees, and other compensation that customers pay for use of such travel websites or related services are paid to the relevant subsidiary, not to [Defendant]...[and] that [Defendant] owns the stock of the Operating Subsidiaries." (*Id.* at 4). Defendant argues therefore that "there are no uncontroverted allegations that come even close to showing that Expedia Group committed a tort in Florida" sufficient for §48.193(1)(a)(2) of the Florida long arm statute. (DE 124 at 15).

Plaintiff's Amended Complaint states that "Expedia is the corporate parent company of numerous brands. In fact, Expedia lists a total of 21 subsidiaries or affiliates, through which it maintains more than 200 travel booking sites across more than 70 countries...." (DE 49 at 17).

9

Plaintiff also attaches to his Response in Opposition a sworn declaration from Ana C. Malave, counsel for Plaintiff. Ms. Malave declares that Defendant's partial responses to Plaintiff's requests for admissions and interrogatories show that Defendant and "its wholly owned subsidiaries are collectively referred to as 'Expedia Group,' the 'Company,' 'us,' 'we,' and 'our.' (DE 128-1). Ms. Malave also states that Defendant is the "majority owner of Expedia, Inc., which operates the expedia.com website." Plaintiff argues that Defendant's forms refer to Expedia and its subsidiaries as one entity or at least there is sufficient control between the entities that one's contacts may subject the other to personal jurisdiction. Plaintiff argues therefore with reliance on Defendant's Form 10-K, and other responses to Plaintiff's discovery requests, that "Defendant's activities satisfy the requirements of §48.193(2)... because it has engaged in 'substantial and not isolated activity' within Florida through the actions of its Florida subsidiaries, which it directs, manages, and controls." (DE 128 at 11). Plaintiff also attaches Defendant's first Amended Objections and Response to Plaintiff's First Requests for Admission. (DE 128-1). In these discovery responses Defendant "admits that the subsidiary that has offered reservations at the Copacabana through the expedia.com website is wholly owned by [Defendant]." (DE 128-1 at 15).

The question of personal jurisdiction ultimately appears to be whether Expedia Group, Inc. is the correctly identified entity. Defendant, relying on its attached affidavit, argues it is not. While the Court in *Del Valle* did note that the Defendants there "did not submit any affidavits or other exhibits rebutting the jurisdictional allegations in the complaint... and [t]he personal jurisdiction challenge, therefore, was facial and not factual," 56 F.4th at 1271, here we have Plaintiff's Complaint, Defendant's Affidavit, and Plaintiff's Affidavit. Where a plaintiff comes forward with substantial evidence contradicting Defendants' affidavits on a motion to dismiss for personal jurisdiction, the court "must, for the purposes of jurisdiction, construe all reasonable evidentiary

10

conflicts in favor of the Plaintiffs." *Meier ex rel. Meier v. Sun Int'l Hotels*, Ltd., 288 F.3d 1264, 1275 (11th Cir. 2002) (reversing the district court for granting a motion to dismiss after Defendants provided affidavits when Plaintiff also submitted substantial evidence contradicting Defendants' affidavits.) Ultimately the question of personal jurisdiction comes down to whether there was sufficient control between the subsidiaries and affiliates to establish jurisdiction. The Parties rely primarily on their attached sworn statements for their arguments rather than substantively brief this issue. Accordingly, on the basis of competing statements, at this stage, construing inferences in Plaintiff's favor, Plaintiff's Complaint and attached evidence in response to Defendant's Motion to Dismiss sufficiently establish at this stage that Defendant is subject to personal jurisdiction. As facts develop and additional clarifying information comes to light, Defendant may, if deemed necessary, raise the issue of personal jurisdiction again at a later stage of this case.

### III. FAILURE TO STATE A CLAIM

Defendant argues that Plaintiff has failed to allege an actionable claim under the Helms-Burton Act by failing to plead facts to show 1) that Plaintiff owns an actionable claim to the Copacabana and 2) that Defendant trafficked in the Copacabana. I will address these arguments in turn.

#### 1. *Ownership*

Defendant first argues that Plaintiff has failed to properly allege that an interest in the Copacabana was inherited by Mr. Soto. (DE 124 at 17). The Helms-Burton Act gives a cause of action to "any United States national who owns the claim to [confiscated property]." §6082(a)(1)(A). Plaintiff has pleaded that "Soto's predecessors continuously owned, posses, and used the Copacabana until the communist Cuban government confiscated in 1961" and that "[s]ince its confiscation, and as of the time of filing this lawsuit, the Soto Family, subsequently

Osvaldo N. Soto… have been the rightful owners of the claim to the Copacabana." (DE 49 at 13-14). Defendant argues that these allegations are insufficient because nothing in the Complaint describes what type of interest Antonio Soto had in the Copacabana, only that he "inaugurated" the hotel in 1955. (DE 124 at 18). However, Plaintiff does allege that his predecessors "continuously owned" the hotel. This is sufficient. There is no indication that the text of the statute requires Plaintiff to state the percent of interest owned or provide documentation of the inheritance at this stage in the litigation.

Defendant next argues that Plaintiff fails to allege that the Estate of Osvaldo Soto acquired ownership of the claim to the Copacabana before March 12, 1996. (DE 124 at 18). Two provisions of Title III of the Helms-Burton Act contain limitations on which U.S. nationals can bring a claim.

> (B) In the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996.
>
> (C) In the case of property confiscated on or after March 12, 1996, a United States National who, after the property is confiscated, acquires ownership of a claim to the property by assignment for value, may not bring an action on the claim under this section.

§§6082(a)(4)(B) & (C). Defendant argues that because the Estate of Osvaldo Soto only acquired the property upon his death in 2021, this claim is barred by subsection (a)(C) of the Helms-Burton Act, citing two district court cases where an estate was found to be barred by this subsection of the statute because the estates acquired the property after the statutory cutoff. (DE 124 at 19); *See Fernandez v. CMA CGM S.A.*, No. 21-CV-22778-RAR, 2023 WL 4633553, at *1 (S.D. Fla. July 20, 2023); *See also de Fernandez v. Seaboard Marine, Ltd.*, No. 20-CV-25176, 2021 WL 3173213, at *8 (S.D. Fla. July 27, 2021). In this way, Defendant urges this Court to find that Mr. Osvaldo Soto's case died with him and cannot be maintained by his estate.

12

The text of the statute is clear and instructs that a United States national cannot bring an action under Title III "unless such national" acquires an interest to the confiscated property before March 12, 1996. §§6082(a)(4)(B). The statutory language also makes clear that the United States national who acquired ownership of the claim must be the same United States national who brings the Title III action. There is no doubt that Mr. Osvaldo Soto acquired his interest in the Copacabana in 1983 upon the passing of his mother. (DE 49 at 14). Mr. Osvaldo Soto also brought this action himself when he filed the claim originally on October 20, 2024. The question for the Court therefore is when Mr. Osvaldo Soto passed in 2021 and the Court allowed his Estate to substitute in as Plaintiff, did the Estate lose its right to maintain this claim because the Estate acquired claims to confiscated property after the March 12, 1996, cutoff.

The answer is no. When deciding whether to allow the Estate to substitute in as Plaintiff, Judge Cooke already analyzed whether this claim could survive the death of the Party. (DE 48). Finding that the Helms-Burton Act was silent on this issue, Judge Cooke turned to the three-factor test under *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993), and ultimately allowed the Estate to substitute in as Plaintiff. (*Id.*). Federal Rule of Civil Procedure 25(c) makes a substitute plaintiff the legal successor to the original plaintiff. "Their status in the litigation—like the substantive claims they raise or defend—tracks the positions of the original litigants." *Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc.*, 53 F.3d 851, 852 (7th Cir. 1995). Here, there would be no question that Mr. Osvaldo Soto would not be barred by the limitations in §§6082(a)(4)(B) – the Copacabana was confiscated before March 12, 1996, and Mr. Osvaldo Soto was a US national who acquired his ownership of the claim before March 12, 1996. Accordingly, Plaintiff, as a substitute plaintiff (DE 48), is not barred either.

### 2. *Trafficking*

Defendant argues that Plaintiff's claim should be dismissed because Plaintiff fails to allege statutorily required element of "trafficking." (DE 124 at 19). The Helms-Burton Act defines traffics as:

> a person "traffics" in confiscated property if that person knowingly and intentionally--
> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
> (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person, without the authorization of any United States national who holds a claim to the property.

22 U.S.C. § 6023(13)(A). Defendant focuses on the requirement that trafficking must be done "knowingly and intentionally" and argues that Plaintiff failed to plead facts showing that Defendant knew the property at issue was confiscated by the Cuban government and that a U.S. national held a claim to it.

Plaintiff's Complaint included that "since the [Helms-Burton Act's] enactment in 1996, [Defendant has] been on notice that trafficking in the Copacabana... would subject [it] to liability." (DE 49 at 15). Plaintiff references President Clinton's 1996 speech when he signed the act into law, during which he stated that "all companies doing business in Cuba are hereby on notice that by trafficking in expropriated American property, they face the prospect of lawsuits..." (*Id.*). Plaintiff also specifically informed Defendant on September 16, 2020, of intent to commence an action unless Defendant ceased to traffic in the Copacabana. (*Id.* at 16). So at least from September 16, 2020, to October 20, 2020, Defendant was on actual notice of Plaintiff's claim.

I find that this meets the knowledge requirement. The Eleventh Circuit has not addressed the scienter requirement of the Helms-Burton Act. However, other courts in the district have found that an allegation that a defendant continued to traffic in the subject property more than thirty days after receiving plaintiff's pre-suit notice of claim was sufficient to establish Defendant's scienter, "at the very least for the post notice period." *de Fernandez v. Seaboard Marine, Ltd.*, No. 20-CV-25176, 2021 WL 3173213, at *8 (S.D. Fla. July 27, 2021); *See also Glen v. Trip Advisor LLC*, No. 19-cv-1809-LPS, 2021 WL 1200577, at *10 (D. Del. Mar. 30, 2021). Here, Plaintiff informed Defendant of intent to commence this action more than a month before bringing the suit. I therefore find that Plaintiff has adequately plead the requisite scienter for this suit to continue.

Finally, Defendant argues that the "Lawful Travel Clause" applies here and excludes Defendant's behavior from constituting trafficking under the statute. Subparagraph (A) of 22 U.S.C. § 6023(13), as described above, lists four types of conduct that constitute trafficking. Subparagraph (B), which immediately follows, further clarifies that "traffics" as defined in the statute does not include:

> (i) the delivery of international telecommunication signals to Cuba;
> (ii) the trading or holding of securities publicly traded or held, unless the trading is with or by a person determined by the Secretary of the Treasury to be a specially designated national;
> (iii) transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel; or
> (iv) transactions and uses of property by a person who is both a citizen of Cuba and a resident of Cuba, and who is not an official of the Cuban Government or the ruling political party in Cuba.

U.S.C. § 6023(13)(B). Defendant focuses on subsection (iii) (the "Lawful Travel Clause") and argues that because this subsection is part of the definition of traffics and trafficking is an essential element of a Title III Claim, Plaintiff failed to plead facts showing that Defendant's actions fell outside the Lawful Travel Clause. (DE 124 at 22).

15

In response, Plaintiff argues that the Lawful Travel Clause is an affirmative defense that Defendant bears the burden of proving at a later stage in this litigation and therefore is not an argument Plaintiff had to defeat in its pleadings. (DE 128 at 22). "[A]n affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters." *VP Props. & Devs., LLLP v. Seneca Specialty Ins. Co.*, 645 F. App'x 912, 916 (11th Cir. 2016) (internal quotation marks and citation omitted). "The touchstone for determining the burden of proof under a statutory cause of action is the statute itself." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1110 (11th Cir. 2008). While the "ordinary default rule [is] that plaintiffs bear the risk of failing to prove their claims," the burden is properly placed on the defendant when certain issues "can fairly be characterized as affirmative defenses or exemptions." *Id.*

The structure of the Helms-Burton Act supports a finding that the Lawful Travel Clause is an affirmative defense to trafficking that must be established by Defendant, not negated by Plaintiff in its pleadings. Section 13 of the Statute, which lays out the definition for "Traffics" begins with Subsection (A) and states "as used in subchapter III, and except as provided in subparagraph (B), a person "traffics" in confiscated property, if that person knowingly and intentionally…" U.S.C. § 6023(13). The statute is therefore explicit that what follows in subparagraph (B) are *exceptions* to unlawful trafficking. A statutory exception to an otherwise broad definition fits the mold of a traditional affirmative defense because it requires "new allegations of excuse, justification, or other negating matters." *VP Props. & Devs., LLLP*, 645 F. App'x at 916. Again, while the Eleventh Circuit has not reached this issue yet, it appears that every other court in this district that has addressed this issue has uniformly held that the Lawful Travel Clause is an affirmative defense. *See, e.g., Regueiro v. Am. Airlines, Inc.*, No. 19-cv-23965-JEM, 2022 WL 2399748, at *10 (S.D.

Fla. May 20, 2022); *de Fernandez v. Crowley Holdings, Inc.*, 593 F. Supp. 3d 1162, 1171 (S.D. Fla. 2022); *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1286 (S.D. Fla. 2019); *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2019 WL 8895241, at *3 (S.D. Fla. Aug 28, 2019). Accordingly, I do not find that Plaintiff's failure to plead that Defendant's conduct fell outside of the Lawful Travel Clause is grounds to dismiss this action.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (DE 124) is **DENIED.**

**SIGNED** in Chambers at West Palm Beach, Florida, this 3 day of April, 2024.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record